James C. Shah (SBN 260435)
Kolin C. Tang (SBN 279834)
**MILLER SHAH LLP**
19712 MacArthur Blvd., Suite 222
Irvine, CA 92612
Telephone: (866) 545-5505
Facsimile: (866) 300-7367
Email: jcshah@millershah.com

[Additional Counsel on Signature Page]

*Attorneys for Plaintiff Jan Morton*

# IN THE UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF CALIFORNIA
### WESTERN DIVISION

| | |
|---|---|
| JAN MORTON, individually, and on behalf of all others similarly situated, | **CLASS ACTION** |
| Plaintiff, | Case No: 8:24-cv-1103 |
| v. | **CLASS ACTION COMPLAINT** |
| IDEAL TAX SOLUTION, LLC, | **JURY TRIAL DEMANDED** |
| Serve officer or registered agent at: 2 MacArthur Place, Suite 300 Santa Ana, California 92707 | |
| Defendant. | |

Plaintiff Jan Morton ("Plaintiff" or "Morton"), individually, and on behalf of all others similarly situated, and through her counsel of record, submits her Complaint against Defendant Ideal Tax Solution, LLC ("Defendant") and states:

## INTRODUCTION AND BACKGROUND

1. Morton brings this case to protect the privacy rights of herself and a class of similarly situated people who were called and sent text messages on their phones by Defendant. Defendant repeatedly placed calls and texts to Morton and the putative class members despite: (1) not having the appropriate form of consent to call and text their phones; (2) the phone numbers of Morton and the putative class members being registered on the National Do-Not-Call Registry ("DNC List"); and (3) Defendant not obtaining the required registration from the State of Texas to call people located in the State of Texas.

2. In the early 1990s, Congress enacted the Telephone Consumer Protection Act ("TCPA") to protect consumers' privacy rights, namely, the right to be left alone from unwanted telemarketing calls. A leading sponsor of the TCPA described unwanted telemarketing calls as "the scourge of modern civilization." 137 Cong. Rec. 30821 (1991).

3. The TCPA affords multiple protections for consumers. First, the TCPA prohibits companies from placing prerecorded or artificial voice calls to persons without first obtaining the called party's "prior express written consent." Second, the TCPA prohibits companies from calling persons whose phone numbers are registered on the DNC List. Third, the TCPA prohibits companies from calling persons who request to no longer receive such calls (i.e. to be placed on a company's internal-do-not-call list).

4. The TCPA provides that each person to whom a prerecorded or artificial voice call is placed is entitled to recover a penalty of $500 per call violative of the TCPA, and up to $1,500 per call if the TCPA is willfully or knowingly violated.

5. The TCPA provides that a person who is called despite their phone number being registered on the DNC List is entitled to recover a penalty of up to $500 per call

violative of the TCPA, and up to $1,500 per call if the TCPA is willfully or knowingly violated. The same penalty applies for persons called who previously requested to no longer be called (i.e. to be placed on a company's internal do-not-call list).

6. The Texas Business and Commercial Code also protects persons with Texas area codes from telemarketing calls like those received from Morton. Specifically, a company who wishes to place telemarketing calls to Texas residents must first obtain a registration to do so from the Texas Office of the Secretary of State. The penalty for placing such calls without the appropriate licensure is a statutory damage of $5,000 per call, among other penalties.

7. The problem with receiving unwanted telemarketing communications is a problem that most people in this country, like Morton, frequently face. For example, in the first four months of 2024 alone, approximately 16.9 billion robocalls were placed in the United States. RobocallIndex.com, YouMail Robocall Index, https://robocallindex.com/history/time (last visited May 21, 2024). The private right of enforcement of the TCPA is critical to stopping the proliferation of these unwanted telemarketing calls. For example, while the Federal Communications Commission levied over $200 million in penalties against telemarketers between 2015 and 2018, it collected less than $7,000 of that amount. *See* Sarah Krouse, *The FCC Has Fined Robocallers $208 Million. It's Collected $6,790*, THE WALL STREET JOURNAL, March 28, 2019, https://www.wsj.com/articles/the-fcc-has-fined-robocallers-208-million-its-collected-6-790-11553770803.

**JURISDICTION AND VENUE**

8. This Court has subject-matter jurisdiction over the TCPA claims in this action under 28 U.S.C. § 1331, which grants this court original jurisdiction of all civil actions arising under the laws of the United States.

9. This Court has personal jurisdiction over Defendant because Defendant is a California limited liability company, Defendant's headquarters are in California, Defendant's principal place of business is in California, Defendant transacts business in

California, Defendant advertises to persons in California, and Defendant sells its various products and services in California.

10. Venue is proper under 28 U.S.C. §§ 1391(b)(2) as a substantial portion of the events giving rise to the claim arose in this District.

## PARTIES

11. Morton is an individual who at all times material to this Complaint has been a citizen of the State of Texas.

12. Morton brings this action on behalf of herself and all others similarly situated.

13. Defendant is a limited liability company organized under the laws of the State of California, and, at all times relevant to this Complaint, has been in good standing to transact business in California and throughout the United States. Defendant, thus, is a California citizen.

14. Defendant describes its business as "helping clients who are suffering through a tax debt issue . . . and providing dedicated and comprehensive professional representation in defense of taxpayer rights."

15. Defendant offers a variety of services according to its Better Business Bureau profile including, but not limited to, "IRS Fresh Start", "IRS Fresh Start Program", "Tax Help", "IRS Help", "Tax Preparation", "Tax Relief" and "Tax Settlement."

16. Defendant charges money for these services and provides its services to persons in California and throughout the United States.

## DEFENDANT'S AGGRESSIVE TELEMARKETING

17. Morton is the owner of two cell phones. Her phone numbers are 972-XXX-4013 ("the 4013 number") and 972-XXX-7109 ("the 7109 number").

18. Morton registered her 4013-phone number on the DNC List on November 17, 2004, for the purpose of protecting her right to privacy, namely, the right to be left alone from unwanted telemarketing communications on her phone.

19. Morton registered her 7109-phone number on the DNC List on October 18, 2007, for the purpose of protecting her right to privacy, namely, the right to be left alone from unwanted telemarketing communications on her phone.

20. Morton's phone is a residential line that is used primarily for personal purposes, namely, to communicate with friends and family members.

21. Morton's phone account is held in her personal name.

22. On or about May 23, 2022, Morton received a text message on her 4013-phone number from Defendant, stating:

> TRC: You might be eligible for up to 70 percent reduction on your tax debt depending on your situation. Contact me 187774450802 – Ben.
>
> Text STOP to end.

23. On information and belief, "TRC" stands for "Tax Relief Center."

24. Morton responded to the text by stating, "stop." Defendant then responded, "NETWORK MSG: You replied with the word "stop" which blocks all text sent from this number."

25. On May 25, 2022, Defendant placed a prerecorded voice call to Morton's 4013-phone number. The recorded message stated, "Hi! This is Rachel from the Tax Relief Center. I have great news for you. It looks like you may be a good candidate for the IRS Fresh Start Program. If you qualify you will pay a fraction of the cost to settle your debt. Let us help you get this taken care of before the program expires. Press one to get tax help. Press two if you no longer owe the IRS."

26. To determine who was contacting her in the text message and phone call she received as the caller did not identify the name of the company, Morton called back the number identified in the text message and the phone number associated with the phone call on May 31, 2022, and June 1, 2022, respectively.

27. The persons on the calls identified themselves as Ideal Tax and sent Morton e-mails from e-mail addresses ending with "idealtax.com" and containing Defendant's logo.

CLASS ACTION COMPLAINT -5-

28. On June 1, 2022, Morton advised Defendant in writing she never provided them permission to contact her and requested that Defendant no longer contact her.

29. One of Defendant's sales representatives contacted Morton on June 7, 2022, on her 7109-phone number. Morton advised that she was not interested in Defendant's products or services.

30. On June 15, 2022, Defendant placed a prerecorded voice call to Morton's 7109-phone number. The recorded message stated, "Hi! This is Rachel from the Tax Relief Center. I have great news for you. It looks like you may be a good candidate for the IRS Fresh Start Program. If you qualify you will pay a fraction of the cost to settle your debt. Let us help you get this taken care of before the program expires. Press one to get tax help. Press two if you no longer owe the IRS."

31. On June 16, 2022, Defendant placed a prerecorded voice call to Morton's 7109-phone number. The recorded message stated, "Hi! This is Rachel from the Tax Relief Center. I have great news for you. It looks like you may be a good candidate for the IRS Fresh Start Program. If you qualify you will pay a fraction of the cost to settle your debt. Let us help you get this taken care of before the program expires. Press one to get tax help. Press two if you no longer owe the IRS."

32. On June 16, 2022, Defendant then sent three text messages to Morton's 7109-phone number. The text messages stated:

> TRC: I am trying to get a hold of you in regards to your FREE tax relief consultation. I am waiting for your call. 8774450802 – Ben.
> Text STOP to end.

> TRC: The new IRS Fresh Start Program is for a limited time, let's take you through a free consultation before it expires. 8774450802 – Ben.
> Text STOP to end.

> TRC: I am trying to get a hold of you in regards to your FREE tax relief consultation. I am waiting for your call. 8774450802 – Ben.
> Text STOP to end.

33. Morton never inquired of Defendant's services nor had heard of Defendant's services before investigating the calls on May 31, 2022, and June 1, 2022.

34. Morton never provided Defendant prior express written consent, or any form of consent, to contact her on her cell phones.

35. Defendant may have placed additional calls to Morton, and such calls will be uncovered through discovery.

36. Defendant's conduct violated the privacy rights of Morton and the putative class members, as they were subjected to annoying and harassing phone calls and text messages. Defendant's calls and texts intruded upon the rights of Morton and the putative class members to be free from invasion of their interest in seclusion.

37. Defendant's conduct caused Morton and the putative class members to waste time addressing and/or otherwise responding to the unwanted calls and texts.

38. On information and belief, Defendant placed calls and text messages to Morton and the putative class members for the purpose of selling its products and services.

## DIRECT AND VICARIOUS LIABILITY

39. On May 9, 2013, the FCC determined that sellers may not avoid liability by outsourcing telemarketing in a Declaratory Ruling, stating:

> [A]llowing the seller to avoid potential liability by outsourcing its telemarketing activities to unsupervised third parties would leave consumers in many cases without an effective remedy for telemarketing intrusions. This would particularly be so if the telemarketers were judgment proof, unidentifiable, or located outside of the United States, as is often the case. Even where third-party telemarketers are identifiable, solvent, and amenable to judgment limiting liability to the telemarketer that physically places the call would make enforcement in many cases substantially more expensive and less efficient, since consumers (or law enforcement agencies) would be required to sue each marketer separately in order to obtain relief. As the FTC noted, because "[s]ellers may have thousands of "independent" marketers, suing one or a few of them is unlikely to make a substantive difference for consumer privacy.

*In re: Dish Network, LLC,* 28 F.C.C. Rcd. 6574 at 6588 (May 9, 2013) (internal citations omitted).

40. Moreover, the May 2013 FCC ruling rejected a narrow view of TCPA liability, including the assertion that a seller's liability requires a finding of formal actual agency and immediate direction and control over third parties who place a telemarketing call." *Id*. at 6587 n. 107.

41. The evidence of circumstances pointing to apparent authority on behalf of the telemarketer "should be sufficient to place upon the seller the burden of demonstrating that a reasonable consumer would not sensibly assume that the telemarketer was acting as the seller's authorized agent." *Id.,* at 6593.

42. If Defendant directly placed the calls and texts at issue, Defendant is directly liable for those calls and texts.

43. However, Defendant may have hired, encouraged, permitted, and enjoyed the benefits of mass telemarketing by third parties who are unknown at this time as the texts and calls only led back to Defendant and no other entity.

44. Alternatively, to the extent a third party sent the calls and texts at issue, such party or parties had actual and/or apparent authority to act on behalf of Defendant.

45. Likewise, Defendant may have also ratified a third party's violations of the TCPA by accepting leads and deriving profit from the improperly placed calls and texts.

46. Defendant controlled or had the right to control the marketing activities of any potential third party.

47. Defendant is not permitted under the law to outsource and contract its way out of liability by directing and benefiting from its agents' TCPA violations.

48. For the counts identified below, if Defendant directly placed the calls and texts at issue, it is directly liable. In the alternative, to the extent any calls or texts were made by a third-party agent(s) acting on Defendant's behalf, Defendant can be held jointly and severally liable as Defendant is vicariously liable for those unlawful calls and text messages.

# CLASS ALLEGATIONS

49. Pursuant to Federal Rule of Civil Procedure 23(a), (b)(2) and (b)(3), Morton brings this lawsuit as a class action on behalf of herself and all others similarly situated. This action satisfies the requirements of Rule 23.

50. Morton seeks to represent the following classes:

**Prerecorded Voice Call Class:** All persons in the United States who from four years prior to the filing of this action through the date a class is certified to whom Defendant (or someone acting on its behalf) placed a prerecorded or artificial voice call to the recipient's phone.

**DNC List Class:** All persons in the United States who from four years prior to the date of the filing of this lawsuit until the date of class certification: (1) to whom Defendant (or someone acting on its behalf) placed two or more calls or text messages during a 12-month period; (2) where the calls or texts were made in connection with a campaign to solicit Defendant's products or services; and, (3) whose number was registered on the DNC List for more than 30 days at the time the calls were received; (4) where the phone number is registered to an individual, rather than a business.

**Texas Registration Certificate Class:** For two years prior to the filing of this suit until the date a class is certified, all persons with Texas area codes who received a marketing phone call from Defendant (or someone acting on its behalf) and at such time Defendant had not obtained a registration certificate from the Office of the Secretary of State.

51. Morton reserves the right to add administrative subclasses, or to amend the definition of the proposed classes, during the lawsuit proceedings.

52. The members of the proposed classes are so numerous that joinder of all members is impracticable. Morton reasonably believes that hundreds or thousands of people have been harmed by Defendant's actions. Records of the phone numbers of the putative class members and the text message correspondence with the putative members are readily identifiable through records available to Defendant.

53. Members of the proposed classes have suffered damages in an amount such that it would make filing separate lawsuits by individual members economically infeasible.

54. Common questions of law and fact exist as to all members of the proposed classes and predominate over any questions affecting only individual members. The questions of law and fact common to the proposed classes include, but are not limited to:

    a. Whether Defendant placed prerecorded voice calls to Morton and the putative class members;

    b. Whether Defendant placed prerecorded voice calls and sent text messages to phone numbers registered on the DNC list;

    c. Whether Defendant's conduct 47 U.S.C. § 227(b);

    d. Whether Defendant's conduct violates 47 U.S.C. § 227(c);

    e. Whether Defendant's conduct violates the rules and regulations implementing the TCPA;

    f. Whether Morton and the putative class members are entitled to increased damages for each violation based on the willfulness of Defendant's conduct;

    g. Whether Defendant placed calls to persons with Texas area codes without first obtaining the requisite registration certificate from the Texas Secretary of State; and

    h. Whether Defendant's conduct violates the Texas Business and Commercial Code.

55. Morton's claims are typical of the claims of the proposed class members because her claims arise from the same practice that gives rise to the claims of the members of the proposed classes and are based on the same legal theories.

56. Morton and her counsel will fairly and adequately protect the interests of the members of the proposed classes. Morton's interests do not conflict with the interests of the proposed classes she seeks to represent. Morton has retained lawyers who are competent and experienced in class action litigation, including TCPA litigation and consumer law.

57. Morton's counsel will vigorously litigate this case as a class action, and Morton and her counsel are aware of their responsibilities to the putative members of the classes and will discharge those duties.

58. A class action is superior to all individual lawsuits for this controversy. Joinder of all proposed members of the proposed classes in one action is impracticable, if not impossible, and prosecuting hundreds or thousands of individual actions is not feasible. The size of the individual claims is likely not large enough to justify filing a separate action for each claim. For many, if not most, members of the proposed classes, a class action is the only procedural mechanism that will allow recovery. Even if members of the proposed classes had the resources to pursue individual litigation, that method would be unduly burdensome to the courts. Individual litigation could also result in inconsistent adjudications.

59. In contrast, a class action is superior in that it will benefit the court and litigating parties through efficiency, economy of scale and unitary adjudication resulting from supervision of the litigation by a single court.

60. Questions of law and fact, particularly the propriety of placing prerecorded voice calls and text messages to persons, predominate over questions affecting only individual members.

## COUNT I
**Violations of the TCPA, 47 U.S.C. § 227(b)** *et seq.*
**(Prerecorded Voice Violations – Individually and on Behalf of the Putative Prerecorded Voice Class)**

61. Morton incorporates the allegations in the previous paragraphs as if fully stated in this Count.

62. The TCPA states, in relevant part, "It shall be unlawful . . . (A) to make any call . . . using [a] prerecorded voice . . . to any telephone number assigned to a . . . cellular telephone . . . ." 47 U.S.C. § 227(b)(1).

63. A prerecorded voice telemarketing call cannot be placed to a recipient without first obtaining the recipient's "prior express written consent." 47 C.F.R. § 64.1200(a)(2).

64. The term "prior express written consent" means "an agreement, in writing, bearing the signature of the person called that clearly authorizes the seller to deliver or cause to be delivered to the person called advertisements or telemarketing messages using an automatic telephone dialing system or an artificial or prerecorded voice, and the telephone number to which the signatory authorizes such advertisements or telemarketing messages to be delivered." 47 C.F.R. § 64.1200(f)(8)(i).

65. Morton and the putative class members did not provide "prior express written consent" as that term is defined in 47 C.F.R. § 64.1200(f)(9), for Defendant to contact them on their phones.

66. The calls placed by Defendant to Morton and the putative class members were telemarketing calls because those calls encouraged the purchase of Defendant's products and/or services. 47 C.F.R. § 64.1200(f)(8)(i).

67. By placing calls to the phones of Morton and the putative class members without first obtaining their prior express written consent, Defendant violated the express provisions of the TCPA, including, but not limited to, 47 U.S.C. § 227(b)(1).

68. The TCPA provides damages of $500 and up to $1,500 per violation. 47 U.S.C. § 227(b)(3).

69. Defendant violated Section 227(b) of the TCPA by placing the aforementioned prerecorded voice calls to Morton's phones.

70. Defendant knew or should have known it did not have the appropriate form of consent to contact Morton and the putative class members yet continued to call them.

71. Morton and the putative class members are each entitled to $500 per violation of Section 227(b) of the TCPA, and up to $1,500.00 for every violation determined to be willful.

PRAYER FOR RELIEF AS TO COUNT I

WHEREFORE Plaintiff Jan Morton, individually, and on behalf of all others similarly situated, requests the Court grant the following relief in his favor and against Defendant Ideal Tax Solution, LLC:

a. Enter an order against Defendant, pursuant to Federal Rule of Civil Procedure 23, certifying this action as a class action and appointing Morton as the class representative;

b. Enter an order appointing Miller Shah LLP and Butsch Roberts & Associates LLC as class counsel;

c. Enter judgment in favor of Morton and the putative class for all damages available under the TCPA, including statutory damages of $500 per violation, and up to $1,500 per violation if Defendant willfully violated Section 227(b) of the TCPA and/or the applicable TCPA regulations;

d. Award Morton and the class all expenses of this action, and require Defendant to pay the costs and expenses of class notice and administration;

e. Award all applicable pre- and post-judgment interest and court costs; and

f. Award Morton and the class such further and other relief the Court deems just and appropriate.

**COUNT II**
**Violations of the TCPA, 47 U.S.C. § 227(c)** *et seq.*
**(National DNC List Violations – Individually, and on Behalf of the Putative DNC List Class)**

72. Morton incorporates by reference the allegations of the previous paragraphs as if fully stated in this Count.

73. The TCPA provides that is a violation of the law for a person whose phone number is registered on the National Do Not Call Registry to receive more than one call

on their phone "within any 12-month period by or on behalf of the same entity." *See* 47 U.S.C. §§ 227(c)(1), (c)(5); 47 C.F.R. § 64.1200(c)(ii).

74. The penalty for each call placed in violation of the TCPA's restrictions on calling phone numbers registered on the DNC List is up to $500 per call and up to $1,500 per call if the violation is determined to be willful. *See* 47 U.S.C. § 227(c)(5).

75. In addition, the TCPA allows the Court to enjoin Defendant's violations of the TCPA's regulations prohibiting calls to phone numbers registered on the DNC List. *See* 47 U.S.C. §§ 227(c)(5)(A).

76. By placing calls and texts to Morton and the putative class members' phone numbers, which were registered on the DNC List, Defendant violated the TCPA, including, but not limited to, 47 U.S.C. § 227(c)(1) and/or the TCPA's corresponding regulations.

77. Defendant or those acting on its behalf knew or should have known that Morton's and the putative class members' phone numbers were registered on the DNC List.

78. Defendant or those acting on its behalf willfully violated the TCPA when placing the calls and texts to Morton's and the putative class members' phones.

79. Morton and the putative class members are entitled to damages of up to $500.00 per violation for each call made by Defendant or those acting on its behalf that the Court finds violates the TCPA and up to $1,500.00 per violation if the Court finds that Defendant or those acting on its behalf willfully violated the TCPA.

PRAYER FOR RELIEF AS TO COUNT II

WHEREFORE Plaintiff Jan Morton, individually, and on behalf of all others similarly situated, requests the Court grant the following relief in his favor and against Defendant Ideal Tax Solution, LLC:

    a. Enter an order against Defendant, pursuant to Federal Rule of Civil Procedure 23, certifying this action as a class action and appointing Morton as the class representative;

    b. Enter an order appointing Miller Shah LLP and Butsch Roberts & Associates LLC as class counsel;

    c. Enter judgment in favor of Morton and the DNC List Class members for all damages and other relief available under the TCPA, 47 U.S.C. § 227(c), including injunctive relief, statutory damages of $500 per violation, and up to $1,500 per violation if Defendant willfully violated the TCPA;

    d. Enter a judgment in favor of Morton and the Class that enjoins Defendant from violating the TCPA's provisions and regulations;

    e. Enter judgment in favor of Morton and the Class for all applicable pre-judgment and post-judgment interest amounts;

    f. Enter judgment in favor of Morton and the Class for all costs; and

    g. Award Morton and the Class members such further and other relief the Court deems just and appropriate.

## COUNT III
**Violations of § 302.101 *et seq.* of the Texas Business & Commercial Code**
**(Texas Registration Violations – Individually, and on Behalf of the Putative Texas Registration Certificate Class)**

80. Morton incorporates by reference the allegations of the previous paragraphs as if fully stated in this Count.

81. Morton received calls from Defendant on her phones in Texas, each of which bear Texas area codes.

82. Section 302.101 of the Texas Business & Commerce Code prohibits sellers from engaging in telephone solicitation from a location in this state or to a purchaser located in this state unless the seller obtains a registration certificate from the Office of the Secretary of State for the business location from which the solicitation is made.

83. Defendant violated § 302.101 of the Texas Business & Commercial Code when it or its representatives engaged in continuous and repetitive telephone solicitation

of Morton without obtaining a registration certificate from the Office of the Secretary of State.

84. Section 302.302(a) of the Texas Business & Commerce Code provides that a person who violates this chapter is subject to a civil penalty of no more than $5,000 for each violation. Furthermore, Section 302.302(d) provides that the party bringing the action is also entitled to recover all reasonable cost of prosecuting the action, including court costs and investigation costs, deposition expenses, witness fees, and attorney's fees.

PRAYER FOR RELIEF AS TO COUNT III

WHEREFORE Plaintiff Jan Morton, individually, and on behalf of all others similarly situated, requests the Court grant the following relief:

  a. Enter an order against Defendant Ideal Tax Solution, LLC pursuant to Federal Rule of Civil Procedure 23(a), (b)(2) and (b)(3), certifying this action as a class action and appointing Hudson as the class representative;

  b. Enter an order appointing Miller Shah LLP and Butsch Roberts & Associates LLC as counsel for the class;

  c. Enter judgment in favor of Morton and the class members for all damages available under Texas Commercial & Business Code, including statutory damages of $5,000 per violation;

  d. Award Morton and the class members all reasonable costs of prosecuting the action, including court costs and investigation costs, deposition expenses, witness fees, and attorney's fees;

  e. Award Morton and the class all expenses of this action, and requiring Defendant to pay the costs and expenses of class notice and administration; and,

  f. Award Morton and the class such further and other relief the Court deems just and appropriate.

# DEMAND FOR JURY TRIAL

Please take notice that Plaintiff demands a jury trial in this case.

Dated:    May 22, 2024                    Respectfully submitted,

By: /s/ James C. Shah
James C. Shah (SBN 260435)
Kolin C. Tang (SBN 279834)
**MILLER SHAH LLP**
19712 MacArthur Blvd., Suite 222
Irvine, CA 92612
Telephone: (866) 540-5505
Facsimile: (866) 300-7367
Email: jcshah@millershah.com
         kctang@millershah.com

Sydney D. Finlay (SBN 343577)
**MILLER SHAH LLP**
1230 Columbia Street, Ste. 1140
San Diego, CA 92101
Telephone: (866) 540-5505
Facsimile: (866) 300-7367
Email: sdfinlay@millershah.com

Christopher E. Roberts (*pro hac* forthcoming)
**BUTSCH ROBERTS & ASSOCIATES LLC**
7777 Bonhomme Avenue, Suite 1300
Clayton, Missouri 63105
Ph: (314) 863-5700
Fax: (314) 863-5711
Email: CRoberts@butschroberts.com

*Attorneys for Jan Morton*